IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KIMBERLY A. T. T.,[1] <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Defendant. | No. 23-CV-3039-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

_____

Plaintiff Kimberly A. T. T. seeks judicial review of the Commissioner of Social Security's (the Commissioner) final decision denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues the administrative law judge (ALJ) mischaracterized Plaintiff's past relevant work and failed to develop the record for a medical opinion. For the reasons that follow, I **affirm** the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed for DI benefits for the period between May 30, 2020, and August 1, 2021, alleging she was disabled due to broken wrists, back surgeries, spinal fusions, issues with her left leg, and thyroid problems. AR[2] 17, 59, 213. Plaintiff, who was 55 years old at the alleged onset date, reported prior work as a charge nurse, store clerk, donut maker, and nurse. AR 59, 63, 214. On May 30, 2020, she fell in her yard and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] AR refers to the administrative record in this case (Doc. 7).

twisted her leg and fractured her wrists, which required surgery. AR 45-47. She reported that for nearly the next six months, she needed help with basic daily activities, such as bathing and dressing, as well as household activities. AR 45-46. She also reported that she suffered leg weakness and issues with balance (causing her to fall a couple of times) and problems gripping and holding things (she had to relearn how to hold a pencil and write). AR 45-47.

Plaintiff's claim was denied initially in November 2020 (AR 58-63) and on reconsideration in July 2021 (AR 64-76). ALJ John Mills, III, held a hearing in October 2022, at which Plaintiff and a vocational expert (VE) testified. AR 17, 36-57. The ALJ issued a written opinion on November 2, 2022, following the five-step process outlined in the regulations[3] to determine whether Plaintiff was disabled. AR 17-30. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period (between May 30, 2020, and August 1, 2021; Plaintiff began working again on August 2, 2021). AR 17, 20. At steps two and three, the ALJ determined Plaintiff had severe impairments of "degenerative disc disease, rheumatoid arthritis, history of bilateral wrist fractures, remote history of lumbar fusion surgery, obesity, asthma, and migraines," and found they did not meet or equal a listed impairment. AR 20, 22. For step four, the ALJ determined Plaintiff had the residual functional capacity

---

[3] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **20 C.F.R. § 404.1520(a)(4)**. The claimant bears the burden of persuasion to prove disability. *Goff*, 421 F.3d at 790.

(RFC)[4] to perform light work[5] with some physical limitations. AR 23. Based on the RFC determination and testimony from the vocational expert (VE), the ALJ found that Plaintiff could perform her past relevant work as a charge nurse and was thus, not disabled. AR 29.

The Appeals Council denied Plaintiff's request for review on August 14, 2023 (AR 1-3), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[6] Plaintiff timely filed a complaint in this court on October 17, 2023. Doc. 4. The parties have briefed the issues (Docs. 14, 16, 17) and consented to the exercise of jurisdiction by a United States magistrate judge (Doc. 13).

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[7] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[8] The court "do[es] not reweigh the evidence or review the factual record de novo."[9] If, after reviewing the evidence, "it is possible to draw two inconsistent positions

---

[4] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." **20 C.F.R. § 404.1567(b).**

[6] *See* **20 C.F.R. § 404.981**.

[7] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[8] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[9] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[10]

Plaintiff argues the ALJ's decision is not support by substantial evidence because the ALJ erred by failing to develop the record, first about Plaintiff's past relevant work (characterizing it as charge nurse rather than a composite job) and then about a medical opinion (failing to inquire about the source of the functional capacity examination and opinion).

### A. *Characterization of Plaintiff's Past Work*

Where a claimant "can perform her past relevant work, either as she actually performed it or as the position is generally performed in the national economy, then she is not 'disabled.'"[11] The ALJ has a "duty to fully investigate and make explicit findings as to the physical and mental demands of [claimant]'s past relevant work and to compare that with what [claimant] herself is capable of doing before the ALJ determines that she is able to perform her past relevant work."[12] An ALJ can meet this obligation by citing to a specific occupation in the Directory of Occupational Titles (DOT), if it correctly identifies the claimant's past relevant work.[13] A claimant "bears the burden to show that she cannot perform her past relevant work."[14]

In this case, the ALJ identified Plaintiff's past relevant work as charge nurse under DOT § 075.167-010, noting that Plaintiff "acknowledged having past work as charge

---

[10] ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

[11] ***Sloan***, 933 F.3d at 950; *see also* **20 C.F.R § 404.1520(a)(4)(iv)**.

[12] ***Michele Z. v. Kijakazi***, No. 21-cv-661, 2022 WL 4472746, at *8 (D. Minn. July 28, 2022) (cleaned up) (quoting ***Young v. Astrue***, 702 F.3d 489, 491-92 (8th Cir. 2013)) (collecting cases).

[13] ***Michele Z.***, 2022 WL 4472746, at *8.

[14] ***Sloan***, 933 F.3d at 950.

4

nurse," and relying on the VE's testimony about that position. AR 29. The ALJ recognized that although the position of charge nurse involves light work, Plaintiff actually performed the job at the heavy exertion level. AR 29. The ALJ concluded that Plaintiff could perform the position "as generally performed" based on the VE's testimony.[15] *Id*. The issue is whether the ALJ properly characterized Plaintiff's past relevant work as a charge nurse. Plaintiff argues the ALJ erred in characterizing her past work because the job, as performed, involved additional duties and thus, constituted a composite job.

"A composite job involves 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT,'" rather it may require looking at "multiple DOT occupations to locate the main duties" of the job.[16] A DOT description, thus, does not capture how a composite job is performed in the national economy.[17] Accordingly, an ALJ must evaluate whether the claimant has the RFC to perform a composite job as it was actually performed by the claimant (not as the job is generally performed in the national economy).[18] A job that involves duties beyond those listed in the DOT, however,

---

[15] During the administrative hearing, the VE specifically cited the charge nurse occupation, DOT § 075.167-010 (light work). AR 51. When asked by the ALJ about whether Plaintiff could perform work as a charge nurse, the VE clarified the heaviest amount of weight Plaintiff lifted when performing that job (100 pounds when moving residents). AR 52-53. Based on that, the VE classified the job as performed as heavy work. AR 53. The VE testified that Plaintiff would not be able to perform the charge nurse position as performed, but found she could perform the job as generally performed in the national economy. *Id*.

[16] *Sloan*, 933 F.3d at 950 (quoting **Social Security Ruling (SSR) 82-61**, 1982 WL 31387, at *2 (Jan. 1, 1982)); **Program Operations Manual System (POMS) DI 25005.020**.

[17] **SSR 82-61,** 1982 WL 31387, at *2.

[18] *Sloan*, 933 F.3d at 950; *Tammy R. v. Saul*, No. 19-cv-1974, 2020 WL 3965338, at *5 (D. Minn. June 26, 2020).

5

does not automatically constitute a composite job.[19] When the DOT description of a job's duties matches the claimant's statements about the primary duties of her past relevant work, even when the claimant performed some additional duties not included in the DOT description, the job does not equate to a composite job.[20] Where a claimant's prior work "'involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy,' . . . [the] inability to perform these 'excessive functional demands' does not render a claimant disabled."[21]

Substantial evidence supports the ALJ's conclusion that Plaintiff's past relevant work was that of a charge nurse (rather than a composite job).[22] In determining the

---

[19] *Cooper v. Saul*, No. 4:19-CV-00801, 2020 WL 13517525, at 3 (W.D. Mo. July 13, 2020) (relying on *Sloan*, 933 F.3d at 950).

[20] *Id*.

[21] *Sloan*, 933 F.3d at 950 (quoting **SSR 82-61**, 1982 WL 31387, at *2).

[22] *See Sloan*, 933 F.3d at 950-51 (finding DOT description of receptionist "matches [claimant]'s statements about her primary responsibilities," even though she had additional duties that fell under a different DOT occupation because the additional duties "were not the focus of her job," and "[s]he still performed all duties of a receptionist, so this is not a case of a 'composite job' with no counterpart in the DOT"); *Boyd v. O'Malley*, No. 4:23-cv-00142, 2024 WL 706217, at *8 (E.D. Mo. Feb. 21, 2024) (upholding ALJ's decision where claimant's described duties were consistent with those primary duties of cited occupation (cashier)—even though claimant performed additional duties that fell under occupation of a teller—because the additional duties were "not necessarily a 'core' function of her job" as a cashier and she could perform all of the duties of that job even with the additional duties); *Givens v. O'Malley*, No. 4:23-cv-00052, 2024 WL 1253823, at *5 (E.D. Mo. Mar. 25, 2024) (affirming ALJ's determination that prior job was not composite, noting that supervisor performing the duties of less-skilled job (which may be required) does not transform supervisor's work into composite job); *Gerard M. v. Kijakazi*, No. 21-cv-00019, 2022 WL 2221436, at *8 (D. Minn. June 21, 2022) (finding claimant did not perform composite job where some duties performed were not a significant element of the job, regardless of the amount of time spent on them, or they were "in excess of" the required duties of the job); *Moore v. Saul*, No. 18-00877-CV, 2020 WL 13517905, at *5 (W.D. Mo. Mar. 11, 2020) (finding claimant's description of job duties matched the DOT description cited by the VE).

6

demands of a claimant's past relevant work, an ALJ may rely on the record, including the claimant's report about that work and testimony from the claimant and a VE at the administrative hearing.[23] In multiple reports in this case, Plaintiff identified her past work as charge nurse and nurse. AR 214 (disability report); AR 252, 255-56, 274-76 (work-history reports); *see also* AR 283 (on second work-history report (listing four charge nurse positions) Plaintiff wrote the same information (job description) applied to each of the positions). Plaintiff wrote descriptions of the duties she performed as charge nurse: received patient reports from people above her, took blood pressure and vitals, gave medications, and helped lift patients[24] "sometimes" and "when needed." AR 255-56, 276. Under check boxes she indicated she was a lead worker, supervised six to seven nurses, and frequently lifted 50 pounds or more. *Id*. The ALJ also relied on testimony from the VE. When the ALJ asked the VE to characterize Plaintiff's past work as a charge nurse, the VE specifically cited DOT § 075.167-010 and provided the DOT classifications for the position, including that it required a light exertional level. AR 51. The VE then sought clarification about the heaviest weight Plaintiff lifted in her work as

---

I find cases holding the opposite are distinguishable. *See* ***Miranda T. v. Kijakazi***, No. 22-cv-708, 2022 WL 16972540, at *5-6 (D. Minn. Oct. 26, 2022) (noting the ALJ, VE, and claimant "all seemed to concur that [claimant]'s prior job . . . involved various duties, including duties from two other DOT occupations"); ***Michele Z.***, 2022 WL 4472746, at *7 (finding record insufficient to determine if past relevant work constituted a composite job where claimant described cashier as one of her duties but provided no explanation of the actual tasks involved—the court could not determine if the claimant performed all of the duties listed under the "cashier" occupation in the DOT); ***Coleman v. Comm'r Soc. Sec.***, No. 4:20-CV-760, 2021 WL 1010917, at *2 (E.D. Ark. Mar. 16, 2021) (reversing ALJ's decision for failure to consider claimant's past relevant work as a composite job where "the agency's own vocational specialists found the [claimant's] past work to be composite").

[23] ***Cooper***, 2020 WL 13517525, at 3.

[24] In the second work-history report, Plaintiff wrote she helped CNAs (certified nurses' aides) transfer patients, but did not include the notation that this was only done sometimes or as needed. AR 276.

a nurse, and she responded 100 pounds when helping lift and move patients between chairs and beds. AR 52-53. Even with this clarification, the VE did not classify this past relevant work as a composite job (he was aware of composite jobs—he classified Plaintiff's other prior work ("clerk") as a composite of the DOT cashier II and cook helper occupations).[25] AR 51. Although Plaintiff performed duties beyond those of charge nurse (such as lifting patients), the record supports classification of her past relevant work as charge nurse under the DOT and not a composite job.[26]

---

[25] *See Cooper*, 2020 WL 13517525, at *3 (noting VE classified claimant's prior work as office clerk and not a composite job in finding substantial evidence supported ALJ's decision that claimant could perform her past relevant work).

[26] The charge nurse position cited by the VE and the ALJ (titled nurse supervisor) involve the following duties:
> Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with [head nurse] on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.

**DOT § 075.167-010**. By comparison, a general duty nurse's duties involve:
> Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to [surgeon, obstetrician], or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.

**DOT § 075.364-010**. The charge nurse position has a light exertional level while a general duty nurse requires the ability to perform medium work. **DOT §§ 075.167-010, 075.364-101**.

Plaintiff points to the ALJ not eliciting her testimony about the actual duties of her past work, pointing to the ALJ cutting her off as she started to speak when the ALJ asked the VE to characterize the position. AR 51.[27] Plaintiff had full opportunity, however, to present evidence at the hearing, including that her prior work was not that of a charge nurse, but rather of a general duty nurse or a composite of those two positions. She failed to raise the issue before the ALJ. Indeed, at the conclusion of the VE's testimony, the ALJ asked Plaintiff if there was anything else she wanted to say or wanted the ALJ to know—she responded "[n]ot that I'm aware of." AR 56. The ALJ concluded by asking Plaintiff's attorney if there was anything in closing, and the attorney made no mention of an issue or concern with classification of Plaintiff's past relevant work. AR 56-57. The ALJ did not fail to fully develop the record.

In his written decision, the ALJ commented that Plaintiff "acknowledged having past work as a charge nurse" and noted that under the DOT, the charge nurse position involves work at a light exertional level, but specifically found Plaintiff performed that job at a heavy exertional level. AR 29. The ALJ relied on the VE's testimony that based on Plaintiff's age, education, vocational history, and work-related limitations, Plaintiff could not work as a charge nurse as previously performed (due to a higher exertional level), but could do that job as generally performed in the national economy. AR 29, 52-53. The record supports the ALJ's determination.[28]

---

[27] During the VE's testimony, the ALJ listed prior jobs performed by Plaintiff, including charge nurse, and asked the VE to characterize them. AR 51. Plaintiff interjected "[a] charge nurse, I was--." and the ALJ cut in and said "No. I'm sorry. [The VE] is going to characterize those for our past work purposes." *Id*. Plaintiff responded "Okay." *Id*.

[28] *See* **Charette v. Saul**, No. 3:18-cv-254, 2019 WL 7605835, at *6-7 (D.N.D. Nov. 22, 2019) (affirming ALJ's decision that claimant could perform past relevant work of teacher's aide as generally performed (classified as light work) based on VE's testimony, even when ALJ recognized claimant could not perform the position as actually performed (done with more standing and walking than the DOT described)); *see also* **Lund v. Kijakazi**, No. 4:20-cv-00449-AGF, 2021 WL 4133759, at *4-5 (E.D. Mo. Sep. 10, 2021) (finding substantial evidence supported ALJ's conclusion, including normal exams and conservative nature of claimant's

9

### B. Consideration of Medical Opinion

Plaintiff argues the ALJ erred by failing to develop the record about a functional capacity evaluation ("FCE"). The FCE outlined results of testing performed, included comments that explained the testing results, and concluded Plaintiff was limited to sedentary work (only occasionally carrying, lifting, pushing, or pulling 10 pounds; occasionally bending, stooping, squatting, climbing stairs with railings, walking, kneeling, bending, and twisting; and never crawling or climbing ladders). AR 554-56. The ALJ found the FCE "unpersuasive." AR 28. The ALJ explained the FCE was unsigned and although listed the facility that provided the evaluation, it did not indicate a medical provider, "let alone an acceptable medical source." *Id*. The ALJ also found the FCE was "not consistent with the record as a whole, including the more persuasive opinions of [the state-agency consultants]; [Plaintiff]'s own report of serving as the caregiver for her husband, which she described as being equivalent to a full-time job; and the medical evidence showing that [Plaintiff] had good musculoskeletal motion, no sensory deficits, lungs clear to auscultation, no edema, and a fluid and symmetrical gait when last seen on May 4, 2021, less than 12 months after the alleged onset date." *Id*. (record citations omitted).

Plaintiff asserts that because the ALJ noted the FCE was unsigned and that it was not clear which provider prepared the FCE or that the provider was an acceptable medical source, the ALJ was required to learn the provider's identity. Plaintiff relies on *Vossen v. Astrue*[29] to support this argument. In that case, the ALJ gave less weight to a report from the Commissioner's consultative examiner, questioning the authenticity of the

---

treatment; testimony from claimant who was represented by counsel; testimony from VE; and disability, function, and work background reports).

[29] 612 F.3d 1011 (8th Cir. 2010).

functional opinions because that portion of the report was unsigned and appeared to have been submitted after the original opinion.[30] The Eighth Circuit found the ALJ erred and remanded for further development of the record. The court recognized, however, that an ALJ need not "seek additional clarifying statements" from a medical source "unless a *crucial issue* is undeveloped."[31] In *Vossen*, the issue involved functional limitations—a key issue before the ALJ—and whether the consultative examiner actually authored the limitations included in the report. In this case, however, the identity of the FCE was not a crucial issue, and the ALJ considered the limitations included in the FCE and provided other reasons for finding the FCE limitations unpersuasive.[32] The ALJ did not err in failing to develop the record to identify the name of the provider who prepared the FCE because that information was not crucial to the ALJ's determination.

As explained in his written decision, the ALJ considered the relevant factors[33] and provided reasoning for the conclusion reached about the FCE's persuasiveness.[34]

---

[30] *Id*. at 1014.

[31] *Id*. at 1016 (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

[32] *Corwin v. Saul*, No. C20-2003, 2021 WL 1224906, *14 (N.D. Iowa Mar. 31, 2021) (holding ALJ was not required to determine opinion's author because ALJ gave proper reason for weight given to the report; "Even if the ALJ had learned the identity of this opinion's author, the ALJ provided other good reasons for not giving the opinion full weight.").

[33] An ALJ "evaluate[s] the persuasiveness of medical opinions" considering the following factors: (1) supportability, i.e., "the objective medical evidence and supporting explanations presented by a medical source" in support of his or her opinion; (2) consistency with "evidence from other medical sources and nonmedical sources"; (3) the relationship between the opinion's author and the claimant, such as whether the opinion is from a treating source; (4) whether the medical opinion is by a specialist; and (5) "other factors that tend to support or contradict a medical opinion," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] policies and evidentiary requirements." **20 C.F.R. § 404.1520c(a), (c)**.

[34] The ALJ must "articulate how [the ALJ] considered the medical opinions" and "explain how [the ALJ] considered the supportability and consistency factors," the two most important factors. **20 C.F.R. § 404.1520c(a), (b)(2)**.

Specifically, the ALJ found the FCE to be inconsistent with the other evidence in the record: (1) other medical evidence (including the opinions of the state agency consultants); (2) Plaintiff's report of being a caretaker for her husband; and (3) more recent objective examination results. AR 28. The ALJ's overall decision outlined the medical evidence (including the results of testing and examinations), Plaintiff's reports about her symptoms and their limiting effects, Plaintiff's activities in taking care of her husband (cooking for him, bathing him, administering his medication, and driving him to appointments), the medical opinion evidence, and third-party function reports (by Plaintiff's husband and son). AR 24-28. Indeed, the ALJ adopted some of the limitations included in the FCE (on bending, stooping, climbing stairs, kneeling, climbing ladders). AR 23, 555. Plaintiff takes issue with the ALJ's conclusion and points to evidence that support the limitations in the FCE. It is not the court's place, however, to reweigh the evidence. Nor does the court find that the ALJ's conclusion was not supported by substantial evidence.

### III. CONCLUSION

I **affirm** the Commissioner's decision. Judgment shall enter in favor of the Commissioner.

**SO ORDERED** on December 4, 2024.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa